# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| THOSE CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, SUBSCRIBING TO CERTIFICATE NO. SUAWSD50147-2001,<br><br>　　Plaintiff,<br><br>vs.<br><br>U-DRIVE ACCEPTANCE CORPORATION, INC. and DEBRA SUE HAMMONS,<br><br>　　Defendants. | Case No.: 4:23-cv-00099-JMB |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR PHASE I MOTION FOR SUMMARY JUDGMENT

Plaintiffs, Those Certain Underwriters at Lloyd's, London, subscribing to Certificate No. SUAWSD50147-2001 ("Underwriters"), for their Memorandum of Law in Support of their Phase I Motion for Summary Judgment[1] against Defendants, U-Drive Acceptance Corporation ("U-Drive") and Debra Sue Hammons ("Hammons"), state as follows:

## INTRODUCTION

Underwriters issued U-Drive a claims-made management liability policy effective from January 29, 2020 to January 29, 2021, with a Retroactive Date of January 29, 2020 (the "Policy"). The Policy is triggered by claims made during the policy period, but excludes losses in connection with a claim involving any wrongful acts committed or alleged to have been committed prior to January 29, 2020, the Policy's Retroactive Date. Hammons filed a counterclaim (the "Counterclaim") against U-Drive seeking damages and injunctive relief for its improper presale notice of March 30, 2017 (the "Presale Notice") and post-sale notice of May 16, 2017 (the "Post-Sale Notice") that allegedly resulted in the wrongful repossession of her vehicle in violation of the UCC and Missouri UCC.

Hammons alleged wrongful acts committed exclusively on March 30, 2017 and May 16, 2017, over two years prior to the policy's Retroactive Date. Applying the applicable legal standard of comparing Hammons's allegations with the terms of the Policy, no duty to defend or indemnify exists because the Counterclaim involves wrongful acts committed prior to the Retroactive Date. As detailed below, there are no factual matters in dispute and the only issues are questions of law. On that basis, Underwriters are entitled to summary judgment declaring that they owe no duty to defend or indemnify U-Drive because the Policy does not afford

---

[1] Pursuant to the Court's Amended Scheduling Order [ECF No. 33], Phase I includes dispositive motions pertaining to the duty to defend issue and Phase II, if necessary, would proceed after the conclusion of Phase I and be scheduled at a later date.

coverage for a claim involving alleged wrongful acts that took place long before the Retroactive Date of the Policy.

## UNCONTROVERTED FACTS

A.     **UNDERLYING HAMMONS ACTION**

On August 18, 2019, U-Drive filed a Petition against Debra Sue Hammons in the Circuit Court of Boone County attempting to recover a money judgment under a retail installment contract for a 2007 Subaru Forester purchased by Hammons (the "Hammons Action"). (SOF ¶14) On September 18, 2020, Hammons filed her First Amended Answer and Counterclaim to the Petition and asserted a putative class action against U-Drive (the "Counterclaim").[2] (SOF ¶15) Hammons alleged an unlawful and deceptive pattern of wrongdoing by U-Drive in the collection, enforcement, repossession, disposition of collateral, as well as deficiencies in violation of the UCC and Missouri UCC. (SOF ¶16)

Hammons's Counterclaim alleged that she signed a consumer credit contract for the purchase of a motor vehicle and that, when she fell behind on payments, U-Drive took possession of the vehicle. (SOF ¶17) Significantly, Hammons alleged that, before repossessing the vehicle, U-Drive mailed her a pre-disposition document titled "Notice of Our Plan to Sell Property" dated **March 30, 2017** (the "Presale Notice") and a post-sale "Notice of Sale of Collateral and Possible Deficiency" dated **May 16, 2017** (the "Post-Sale Notice"). (SOF ¶18)

Count I alleged that U-Drive's Presale Notice violated the UCC and that, because U-Drive failed to comply with the requirements of Subchapter 6 of Article 9 of the UCC and reported derogatory information about the class members' accounts, Hammons and the proposed class allegedly suffered actual damages under §400.9-625(c)(2) of the UCC. (SOF ¶19)

---

[2] All references to the "Hammons Action" herein are inclusive of the Counterclaim. The Counterclaim is attached to the SOF as Exhibit 2.

Hammons requested class certification, statutory damages, preliminary and permanent injunctions, and a declaration that the Presale Notice sent to Hammons and the class failed to comply with the statutory requirements. (SOF ¶20) Under Count II (Missouri Subclass's Claim), Hammons alleged that U-Drive's presale and post-sale notices violated the Missouri UCC and requested certification of a Missouri subclass. (SOF ¶21) Count II requested actual damages, statutory damages, pre- and post-judgment interest, attorney's fees, punitive damages, and various injunctive and declaratory relief.[3] (SOF ¶22)

Underwriters defended U-Drive throughout the Hammons Action pursuant to a reservation of rights to deny coverage, including any duty to defend or indemnify U-Drive for any settlement or judgment in the Hammons Action. (SOF ¶23) Pursuant to its reservation of rights, Underwriters agreed to pay independent attorneys of U-Drive's choice to defend the Hammons Action.[4] (SOF ¶23)

**B.  THE POLICY**

Underwriters issued a claims-made Management Liability Policy, with Certificate No. SUAWSD50147-2001, to U-Drive, effective January 29, 2020 to January 29, 2021, with a Retroactive Date of January 29, 2020 (the "Policy"). (SOF ¶6) The Policy was sent to the address of U-Drive's headquarters at 1119 4th Street, Suite 102, Sioux City, Iowa. (SOF ¶7)

The relevant Insuring Agreement of the Policy provides that "Underwriters shall pay on behalf of the **COMPANY** [*i.e.*, U-Drive] **LOSS** resulting from a **CLAIM** first made against the

---

[3] On August 15, 2021, the court in the Hammons Action granted class certification of the Class and Missouri Subclass under Rule 52.08. (SOF ¶24)

[4] Although not directly relevant to the present Phase I motion pertaining to the duty to defend, on November 8, 2023, the Hammons court entered a judgment against U-Drive as discovery sanctions, including a money judgment and injunctive relief. (SOF ¶29) On November 30, 2023, the court awarded attorney's fees and costs and approved an incentive payment to the class representative. (SOF ¶30)

3

**COMPANY** [*i.e.*, U-Drive] during the **POLICY PERIOD** for a **WRONGFUL ACT** and reported to Underwriters in accordance with Section VI. of the Policy." (SOF ¶11)

The Policy defines **LOSS**, in pertinent part, as "monetary damages, settlements, judgments and statutory attorneys' fees awarded which the **INSURED** is legally obligated to pay in response to a covered **CLAIM**…and **DEFENSE COSTS***.*" (SOF ¶12)

The Policy defines **WRONGFUL ACT** as "any actual or alleged act, error or omission, including misstatement, misleading statement, neglect or breach of duty committed by…the **COMPANY**." **CLAIM** is defined, in pertinent part, as "a civil…proceeding for monetary or non-monetary relief received by an **INSURED** which is commenced by service of suit…." (SOF ¶12)

The Policy contains a Retroactive Date Exclusion (the "Retroactive Date Exclusion") stating, "This Policy shall not apply to **LOSS** in connection with any **CLAIM**: Involving any **WRONGFUL ACT** committed or alleged to have been committed prior to the Retroactive Date stated in Item 6 of the Declarations [January 29, 2020]." (SOF ¶13) By operation of Section VI.D. of the General Terms and Provisions of the Policy, "**CLAIM(S)** arising out of a single **WRONGFUL ACT**, or **INTERRELATED WRONGFUL ACTS**, shall be treated as a single **CLAIM**, and such single **CLAIM** shall be considered first made…when the *earliest* **CLAIM** within such single **CLAIM** was first made. . ." (emphasis added). **INTERRELATED WRONGFUL ACTS** is defined as "**WRONGFUL ACTS** that have as a common nexus any fact, circumstance, situation, events or transaction or series of facts, circumstances, situations, events or transactions." (SOF ¶10)

The Policy provides that Underwriters shall have the right and duty to defend U-Drive against any **CLAIM** to which the insurance applies, even if any of the allegations of the **CLAIM** are groundless, false or fraudulent. (SOF ¶8) **DEFENSE COSTS** is defined, in pertinent part,

4

as "reasonable and necessary fees and expenses incurred with the approval of Underwriters in connection with the investigation, adjustment, settlement, defense or appeal of a **CLAIM** made against the **INSURED** for a **WRONGFUL ACT**. . ." (SOF ¶9)

## STANDARD OF REVIEW

Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-588 (1986). The moving party bears the burden of establishing there is no material fact in dispute that precludes judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Once the moving party makes an initial showing that it is entitled to judgment, the non-moving party must set forth facts, supported by evidence, showing that a genuine issue for trial exists. *Id*. at 324. Insurance disputes are particularly well suited for summary judgment because the proper construction of an insurance contract is always an issue of law for the court. *Modern Equipment Co. v. Cont'l W. Ins. Co.*, 355 F.3d 1125, 1128 (8th Cir. 2004).

## ARGUMENT

**I.     CHOICE OF LAW**

The Policy does not contain a choice of law provision. The two potentially applicable state laws that could apply are Iowa, where the insurance policy was entered into, or Missouri, where the Hammons Action was filed. Underwriters should prevail under Iowa or Missouri law, which are consistent regarding application of the duty to defend standards and many of the pertinent coverage issues. See *Brown v. Home Ins. Co.*, 176 F.3d 1102, 1105 (8th Cir. 1999) (under Missouri law, a conflict does not exist unless the interests of the relevant states cannot be reconciled). However, to the extent that a conflict exists between these two states, Iowa law should control.

5

Missouri applies sections 188[5] and 193 of the Restatement (Second) of Conflict of Laws (1971) for choice-of-law issues in casualty insurance contracts. In *Viacom, Inc. v. Transit Cas. Co.*, 138 S.W.3d 723, 724-25 (Mo. 2004), the court held that Pennsylvania law applied to a coverage dispute, reasoning that the insured was incorporated in Pennsylvania, the policies were contracted for and negotiated in Pennsylvania, and the Policies were delivered in Pennsylvania.

Section 193 of the Restatement states that the "validity of. . .[the] insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy. . . ." Under Section 193, comment b, the location of the insured risk is given greater weight than any other single contact in determining which state's law controls, although less weight when the policy covers a group of risks scattered throughout two or more states.

In *Viacom, Inc. v. Transit Cas. Co.*, 138 S.W.3d 723, 724 (Mo. 2004), applying Sections 188 and 193, the Missouri Supreme Court reversed the lower court and held that Pennsylvania law applied to a coverage dispute, reasoning that the insured was incorporated in Pennsylvania, the policies were contracted for and negotiated in Pennsylvania, and the Policies were delivered in Pennsylvania. Significantly, the Supreme Court found that Pennsylvania law applied despite the fact that the underlying toxic tort suit was brought in Missouri.

In this case, U-Drive is an Iowa corporation with its principal place of business also located in Iowa and the Policy was delivered to U-Drive's business address in Sioux City, Iowa. The only other state with contacts is Missouri because the alleged improper notices were sent

---

[5] Section 188 applies to policies like the one at issue here, which has no choice-of-law provision. It provides that the law of the state with the most significant relationship to the transaction and parties governs. Restatement (Second) of Conflict of Laws section 188(1). Section 188(2) also provides what contacts are considered: "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties."

6

from Iowa to Missouri, Hammons resides in Missouri, and the Hammons Action was filed in Missouri. Pursuant to Section 193, Iowa was the principal location of the insured risk during the term of the Policy and its laws should apply in the event of a conflict.

Again, the above may be academic because the laws of Iowa and Missouri are consistent regarding application of the duty to defend. However, neither state has law on point regarding application of the Retroactive Date Exclusion. Thus, Underwriters rely on the laws of Iowa, Missouri and, to the extent there is no law directly on point, the laws of other states.

## II. UNDERWRITERS OWE NO DUTY TO DEFEND OR INDEMNIFY U-DRIVE FOR THE HAMMONS ACTION BECAUSE ALL OF THE ALLEGED "WRONGFUL ACTS" PRECEDED THE RETROACTIVE DATE IN THE POLICY BY OVER TWO YEARS

The "Wrongful Acts" that form the basis of the Counterclaim consist *solely* of two letters sent by U-Drive to Hammons in 2017 (*i.e.*, the Presale Notice and Post-Sale Notice). Because both letters preceded the January 29, 2020 Retroactive Date of the Policy, the Retroactive Date Exclusion applies to bar coverage for the Hammons Action in its entirety.

### A. Rules of Policy Construction

In Iowa, the construction and interpretation of an insurance policy is a question of law for the court to decide. *Johnson v. Farm Bureau Mut. Ins. Co.*, 533 N.W.2d 203, 206 (Iowa 1995). The court must construe an insurance policy to give effect to the intent of the parties. *R & J Enterprizes v. General Cas. Co.*, 627 F.3d 723, 726 (8th Cir. 2010) (Iowa law). The policy is to be construed as a whole, giving the words used their ordinary, not technical meaning, to achieve a practical and fair interpretation. *Gracey v. Heritage Mut. Ins. Co.*, 518 N.W.2d 372, 373 (Iowa 1994).

In Missouri, the interpretation of an insurance policy is likewise a question of law. *Schmitz v. Great Am. Assurance Co.*, 337 S.W.3d 700, 705 (Mo. 2011). "Missouri courts read insurance contracts 'as a whole and determine the intent of the parties, giving effect to that intent

7

by enforcing the contract as written.'" *Lafollette v. Liberty Mut. Fire Ins. Co.*, 139 F. Supp. 3d 1017, 1021 (W.D. Mo. 2015) (quoting *Thiemann v. Columbia Pub. Sch. Dist.*, 338 S.W.3d 835, 840 (Mo. App. W.D. 2011)).

### B. Duty to Defend Principles

Iowa law provides that an insurer's duty to defend arises whenever there is a potential or possible liability to pay based on the facts *at the outset of the case* and is not dependent on the probable liability to pay based on the facts ascertained through trial. *McAndrews v. Farm Bureau Mut. Ins. Co.*, 349 N.W.2d 117, 119 (Iowa 1984) (citing 7C J. Appleman, Insurance Law and Practice § 4684, at 83 (Berdal ed. 1979) (emphasis added). The "facts at the outset of the case" under this test have traditionally been those alleged in the petition in the suit against the insured. *Id.* § 4683, at 42. See also *Chipokas v. Travelers Indem. Co.*, 267 N.W.2d 393, 395 (Iowa 1978) ("In deciding whether an insurer has a duty to defend, the first query is into plaintiff's pleadings to see if the pleadings state facts which bring the claim within the liability covered by the policy."). It is expedient to first resolve whether there is a duty to defend because that duty is broader than the duty to indemnify. *Stine Seed Farm, Inc. v. Farm Bureau Mut. Ins. Co.*, 591 N.W.2d 17, 18 (Iowa 1999) (citing *A.Y. McDonald Indus., Inc. v. Insurance Co. of N. Am.*, 475 N.W.2d 607, 627 (Iowa 1991)). Further, if there is no duty to defend, there is no duty to indemnify either. *Stine Seed Farm, Inc. v. Farm Bureau Mut. Ins. Co.*, 591 N.W.2d 17, 18 (Iowa 1999).

The law of Missouri regarding the duty to defend is consistent with Iowa law. The duty to defend is analyzed by comparing the language of the policy with the allegations in the complaint, and if the complaint alleges facts that give rise to a potential claim within coverage, the duty to defend arises. *McCormack Baron Mgmt. Servs., Inc. v. American Guar. & Liab. Ins. Co.*, 989 S.W.2d 168, 170 (Mo. 1999). Missouri law is also clear that "[w]here there is no duty

to defend, there is no duty to indemnify." *View Home Owners Ass'n v. Burlington Ins. Co.*, 552 S.W.3d 726, 733 (Mo. Ct. App. 2018) (internal citations omitted); see also *Brand v. Kan. City Gastroenterology & Hepatology, LLC*, 414 S.W.3d 546, 556 (Mo. Ct. App. 2013) (holding no duty to defend resulted in no duty to indemnify).

      **C.    Both Iowa and Missouri Courts Hold there is No Duty to Defend Claims that are Not Potentially Covered Under an Insurance Policy**

In *Hasbrouck v. St. Paul Fire & Marine Ins. Co.*, 511 N.W.2d 364 (Iowa 1993), the Iowa Supreme Court considered whether there was a duty to defend a physician under a claims-made professional liability policy with respect to a medical malpractice suit. The policy extended coverage to all claims first made during the policy period and required the insured to report such claims to the insurer within the policy period. The patient and her spouse sued the doctor within the policy period, but the doctor failed to report the suit to his insurer until after the policy had lapsed. The *Hasbrouck* court held there was no duty to defend or indemnify under the policy because the insured failed to report the claim to the insurer during the policy period, a prerequisite to coverage. See also *Farm Bureau Life Ins. Co. v. Chubb Custom Ins. Co.*, 780 N.W.2d 735, 741 (Iowa 2010) (holding timely notice was one of the basic and essential provisions in the claims made policy and required strict compliance).

In *Chipokas v. Travelers Indem. Co.*, 267 N.W.2d 393 (Iowa 1978), the Iowa Supreme Court considered whether there was a duty to defend under a professional liability policy for several underlying actions resulting from an alleged conspiracy to forge a will. Travelers refused to defend the insured, who was ultimately successful in defeating the claims. In determining the duty to defend, the court considered whether the allegations in the complaint brought against the insured on its face alleged facts which fell within the coverage of the liability policy. The *Chipokas* court stressed that "…the great weight of authority supports the view…which

9

generally limits the obligation to defend to those claims which would be covered under the liability policy." *Id.* at 396. The court ultimately held that the allegations of fraud in the underlying suit were excluded from coverage and, hence, Travelers owed no duty to defend. See also *Continental Ins. Co. v. Bones*, 596 N.W.2d 552, 561 (Iowa 1999) (allegations in complaint for wrongful eviction were not an occurrence under the policy and holding no duty to defend or indemnify the insured).

In *Genesis Ins. Co. v. City of Council Bluffs*, 677 F.3d 806, 810 (8th Cir. 2012), applying Iowa law, the court held that the tort of malicious prosecution occurs for insurance purposes on the date the underlying charges were filed against the insured, which was before the beginning of the policy period. Thus, the Eighth Circuit, predicting how the Iowa Supreme Court would rule, held that the insurer owed no duty to defend or indemnify the insured as a matter of law.

Missouri law is consistent and makes clear that the same duty to defend standard applies to class actions. In *Universal Underwriters Ins. Co. v. Lou Fusz Auto. Network, Inc.*, 401 F.3d 876, 879 (8th Cir. 2005), the insurer sought a declaration that there was no duty to defend or indemnify Lou Fusz against a class action complaint for unsolicited fax advertisements that allegedly violated the TCPA. Under Missouri law, a "duty to defend exists where there is a potential liability." *Id.* The duty to defend is determined by comparing the relevant policy provisions with the allegations in the complaint and the facts that the insurer could have reasonably known. *Zeiser Motors, Inc. v. Sentry Select Ins. Co.*, Case No. 4:10CV1261 CDP, 2011 U.S. Dist. LEXIS 44835, at *5 (E.D. Mo. April 26, 2011) (*Penn-Star Ins. Co. v. Griffey*, 306 S.W. 591, 596-97 (Mo. Ct. App. 2010)). The court ultimately held that a duty to defend was invoked because the complaint alleged injury and actual damages under the policy, although some of the requested relief may not ultimately be covered.

10

In *Zeiser Motors, Inc. v. Sentry Select Ins. Co.*, 2011 U.S. Dist. LEXIS 44835 (E.D. Mo. 2011), the court considered the duty to defend a class action complaint alleging that Zeiser, a seller of automobiles, improperly charged the proposed class a document preparation fee in violation of Missouri statutes, and also committed negligence. The complaint alleged negligent, reckless, intentional and malicious conduct, and sought punitive damages. The policy covered negligent conduct, but excluded dishonest, malicious, fraudulent, criminal, or intentional acts or omissions.

The court began its analysis by observing that, under Missouri law, a duty to defend is determined by comparing the allegations of liability in the petition against the relevant policy provisions. The court then proceeded to hold that there was no duty to defend under Coverage A for errors or omissions that result in civil violations of state or federal truth-in-lending statutes because there were no allegations that Zeiser violated a truth-in-lending statute, only that it engaged in malicious and intentional conduct.[6]

> **D.** **Underwriters Owe No Duty to Defend or Indemnify U-Drive for the Hammons Action Based on the Retroactive Date Exclusion Because U-Drive's Allegedly Unlawful Presale and Post-Sale Notices Were Allegedly Sent and Received in 2017, Almost Three Years Before the Policy's Retroactive Date of January 29, 2020.**

Under both Iowa and Missouri law, Underwriters owe no duty to defend or indemnify U-Drive with respect to the Hammons Action because, when comparing the allegations in the class action Counterclaim against the provisions in the Policy, there is no potential coverage. Specifically, the "Wrongful Acts" alleged by Hammons against U-Drive took place more than two years before the Retroactive Date of the Policy, and thus, the Retroactive Date Exclusion applies to bar coverage for the Hammons Action in its entirety.

---

[6] The *Zeiser* court went on to hold that a duty to defend existed under separate Coverage D (errors and omissions) because the petition alleged negligent conduct in addition to intentional conduct.

11

The Retroactive Date Exclusion of the Policy explicitly states that it shall not apply to **LOSS** in connection with any **CLAIM** involving any **WRONGFUL ACT** committed or alleged to have been committed prior to the Retroactive Date stated in Item 6 of the Declarations [January 29, 2020]. The Policy defines a **CLAIM** to include "a civil proceeding" and a **WRONGFUL ACT** as "any actual or alleged act, error or omission, including misstatement, misleading statement, neglect or breach of duty committed by…the **COMPANY**."

Here, there can be no dispute that the Counterclaim constitutes a civil proceeding and thus a "**CLAIM**" under the Policy. Further, there can be no dispute that the "**WRONGFUL ACTS**" that form the basis of such "**CLAIM**" consist of the **March 30, 2017** Presale Notice and the **May 16, 2017** Post-Sale Notice alleged in and attached to the Counterclaim. All this Court need do then is apply the plain language of the Retroactive Date Exclusion to these facts. In doing so, there can only be one conclusion: the Counterclaim is a "**CLAIM**…[i]nvolving <u>any</u> **WRONGFUL ACT** committed or alleged to have been committed prior to the Retroactive Date stated in Item 6 of the Declarations [*i.e.*, January 29, 2020]."[7] Coverage is therefore excluded for the Hammons Action by the plain terms of the Retroactive Date Exclusion.

### E. Courts in Multiple Jurisdictions have Applied Retroactive Date Exclusions Similar to the Policy's Exclusion to Bar Coverage for Claims Involving Alleged Wrongful Acts that Preceded the Retroactive Date

Underwriters did not locate any case authorities decided under Iowa or Missouri law addressing the exact language of the Retroactive Date Exclusion at issue. However, multiple

---

[7] Although not controlling on the duty to defend analysis, the Court in the Hammons Action ultimately granted class certification and awarded the class plaintiffs judgment based on the legal deficiencies of U-Drive's pre-sale and post-sale notices, which form the *actual basis* for U-Drive's liability to the class and to Hammons herself as the class representative. *See, e.g., SW Design Build, Inc. v. Auto-Owners Ins.*, No. 3:16-cv-82, 2017 U.S. Dist. LEXIS 215504, at *28 (D.N.D. Sep. 29, 2017) (emphasis added) ("[t]he duty to indemnify is premised upon the ultimate resolution of the underlying lawsuit and the actual basis for any liability of the insured.").

12

courts in other jurisdictions have not hesitated to enforce similarly worded exclusions to bar coverage.

For example, in *Ferguson v. General Star Indem. Co.*, 582 F. Supp. 2d 91 (Dist. Mass 2008), the court considered whether a legal malpractice suit was subject to a duty to defend or indemnify under a claims-made lawyers professional liability policy with a retroactive date of September 12, 1997. The insured estate planning attorney allegedly failed to file federal and state tax returns (or to make a tax election in 1994), resulting in substantial interest and penalties that were not paid, some of which were after the retroactive date. General Star denied coverage, asserting that the claims arose out of events that preceded the retroactive date, and the court agreed.

The policy in *Ferguson* provided that "[t]he policy does not apply to CLAIMS arising out of negligent act(s), error(s), or omission(s) which took place prior to the Retroactive Date[.]" The *Ferguson* court held that the retroactive date exclusion applied because the events alleged in the complaint arose out of events that took place prior to the retroactive date of September 12, 1997—the failure to file tax returns—even if they took place in part as a "continuing scheme of wrongdoing" that continued after the retroactive date. The *Ferguson* court thus held that there was no duty to defend or indemnify the insured based on the retroactive date exclusion.

Similarly, in *Foster v. Summit Med. Sys.*, 610 N.W.2d 350 (Minn. Ct. App. 2000), the Minnesota Court of Appeals considered whether a retroactive date exclusion in a claims-made directors and officers ("D&O") policy barred coverage for ten separate securities lawsuits and an independent SEC investigation resulting from a scheme to inflate revenues through letters of intent and sham transactions. There, the policies covered loss resulting from a claim made during the policy period for a wrongful act. However, coverage was limited by a retroactive date

13

exclusion, which barred coverage for any claim arising out of any wrongful act actually or allegedly committed prior to June 21, 1995, or interrelated wrongful acts committed thereafter.

In analyzing the applicability of the policy's retroactive date exclusion, the *Foster* court found that the subject scheme involved repetition of the same transactions, with each series of transactions comprised of interrelated acts that occurred both before and after the retroactive date. Consequently, the court held that each element of the retroactive date exclusion was satisfied and that coverage was barred for the underlying actions as a matter of law.

In *Lifelock, Inc. v. Certain Underwriters at Lloyd's*, 146 A.D.3d 565, 45 N.Y.S.3d 78 (App. Div. 1st Dept. 2017), the New York intermediate appellate court reached a similar conclusion where the underlying retroactive date exclusion barred coverage for claims arising out of any related or continuing acts where the first such act was committed prior to the retroactive date. There, six of the eight causes of action alleged in the underlying complaint were expressly based on allegations of acts performed before 2008 and the remaining two counts incorporated those allegations. Under the circumstances, the appellate court held that the underlying complaint fell entirely within the retroactive date exclusion and that coverage was barred. See also *County of Dutchess v. Argonaut Ins. Co.*, 150 A.D.3d 672, 673 (App. Div. 2017) (coverage excluded because wrongful acts were allegedly first committed prior to policy's effective date)

Like the courts in *Ferguson*, *American Southwest*, *Foster* and *Lifelock*, this Court should enforce the plain language of the Retroactive Date Exclusion to preclude coverage for the Hammons Action. The intent of the Retroactive Date Exclusion could not be more clear: it excludes coverage for "<u>any</u> **CLAIM** involving <u>any</u> **WRONGFUL ACT** committed or alleged to have been committed prior to the Retroactive Date stated in Item 6 of the Declarations [January 29, 2020]." (Emphasis in underscore added.) As demonstrated above, the Counterclaim

14

constitutes a "**CLAIM**," as defined by the Policy, and the March 30, 2017 Presale Notice and the May 16, 2017 Post-Sale Notice upon which that "**CLAIM**" is based are "**WRONGFUL ACTS** committed or alleged to have been committed prior to the Retroactive Date stated in Item 6 of the Declarations [January 29, 2020]." Accordingly, the Retroactive Date Exclusion unambiguously applies to bar coverage for the Hammons Action in its entirety.

## CONCLUSION

For these reasons, Underwriters respectfully request that this Court enter summary judgment in their favor under Phase I and enter the specific relief requested in the accompanying Motion for Summary Judgment.

Dated: February 24, 2024

**ORAL ARGUMENT REQUESTED**

                                          Respectfully submitted,

                                          THOSE CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, SUBSCRIBING TO CERTIFICATE NO. SUAWSD50147-2001

                                          By:*/s/: Howard J. Fishman*
                                              One of their attorneys

Michael L. Young
REICHARDT NOCE & YOUNG
12444 Powerscourt Drive
Suite 160
St. Louis, MO  63131
Tel:    (314) 789-1199
Fax:    (314) 754-9795
mly@reichardtnoce.com

  - and

Howard J. Fishman (admitted *pro hac vice*)
KARBAL, COHEN, ECONOMOU, SILK & DUNNE, LLC
200 South Wacker Drive
Suite 2550
Chicago, Illinois 60606
Tel:     (312) 431-3700
Fax:     (312) 431-3670
hfishman@karballaw.com

## CERTIFICATE OF SERVICE

    I, Howard J. Fishman, an attorney of record in this matter, hereby state that I electronically filed the foregoing, PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT, using the CM/ECF SYSTEM, which will send notification to all attorneys of record on this the 24th day of February 2024.

                                          */s/: Howard J. Fishman*
                                          One of their attorneys for Plaintiff,
                                          THOSE CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, SUBSCRIBING TO CERTIFICATE NO. SUAWSD50147-2001