IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| **THOSE CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, SUBSCRIBING TO CERTIFICATE NO. SUAWSD50147-2001,** ) ) ) ) | |
| **Plaintiff,** ) ) | |
| vs. ) ) | Case No.: 4:23-cv-00099-JMB |
| **U-DRIVE ACCEPTANCE CORPORATION, INC. and DEBRA SUE HAMMONS,** ) ) ) ) | |
| **Defendants.** ) | |

**PLAINTIFFS' STATEMENT OF UNCONTROVERTED MATERIAL FACTS IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

Pursuant to Federal Rule of Civil Procedure 56(c) and Local Rule 4.1(E), Plaintiffs, THOSE CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, SUBSCRIBING TO CERTIFICATE NO. SUAWSD50147-2001 ("Underwriters"), submit the following Statement of Uncontroverted Material Facts in support of their Motion for Summary Judgment, filed concurrently herewith.

### THE PARTIES

1. Underwriters consist of sole member Syndicates MKL 3000 and AUL 1274 whose corporate members are foreign companies organized under the laws of the United Kingdom with principal places of business in London, England.  (ECF No. 34, p.2, ¶2)

2. U-Drive Acceptance Corporation, Inc. is an Iowa corporation with its principal place of business located in Sioux City, Iowa.  (ECF No. 34, p.2, ¶3)

3. Debra Sue Hammons ("Hammons") is a Missouri citizen residing in Boone County, Missouri.  (ECF No. 34, p.2, ¶5)

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332 because there is complete diversity between Underwriters and Defendants and the amount in controversy exceeds $75,000, exclusive of interest.  (ECF No. 34, p.2, ¶6)

5. Venue is proper in this district pursuant to 28 U.S.C. §1391(a)(1) and (c).  The Court previously ruled that venue is proper in this district.  (ECF No. 34, p.2, ¶7; ECF No. 26)

### THE INSURANCE POLICY

6. Underwriters issued a claims-made Management Liability Policy No. SUAWSD50147-2001 to U-Drive as the Insured, effective January 29, 2020 to January 29, 2021, with a retroactive date of January 29, 2020 (the "Policy").  (ECF 34, p.6, ¶22, ECF 34-3)  A true and correct copy of the Policy is attached hereto as Exhibit 1.[1]

7. The Policy was issued to U-Drive's address at 1119 4th Street, Suite 102, Sioux City, IA.  (Ex. 1, p. 5)

8. The Policy states as follows regarding the duty to defend:

> **II.  DEFENSE AND SETTLEMENT**
>
> Subject to Article V.B., Underwriters shall have the right and duty to defend any **CLAIM** against the **INSURED** to which this insurance applies, even if any of the allegations of the **CLAIM** are groundless, false or fraudulent.

(Ex. 1, p. 8)

9. The Policy contains the following definitions:

> **III.  DEFINITIONS**
>
> \* \* \*
>
> C.   "**COMPANY**" means
>   1. the **NAMED INSURED**
>   2. any **SUBSIDIARY** of the **NAMED INURED**; and
>   3. the **NAMED INSURED OR SUBSIDIARY** as a debtor, a debtor-in-possession or equivalent status.

---

[1] All references to the Policy (ECF 34-3) will be to the attached Ex. 1.

(Ex. 1, p. 9)

\* \* \*

  **E.** **"DEFENSE COSTS"** means reasonable and necessary fees and expenses incurred with the approval of Underwriters in connection with the investigation, adjustment, settlement, defense or appeal of a **CLAIM** made against an **INSURED** for a **WRONGFUL ACT**, and shall include the cost of attachment or similar bonds. Payment of **DEFENSE COSTS** by Underwriters shall reduce, and may exhaust, the Limit of Liability under this Policy.

(Ex. 1, pp. 9-10)

\* \* \*

  **F.** "**INTERRELATED WRONGFUL ACTS**" means **WRONGFUL ACTS** that have as a common nexus any fact, circumstance, situation, event or transaction or series of facts, circumstances, situations, events or transactions.

  **G.** "**NAMED INSURED**" means the partnership, corporation or other entity named in Item 1. of the Declarations.

  **H.** "**POLICY PERIOD**" means the period from the Inception Date of this Policy to the Expiration Date stated in Item 2. of the Declarations, or to any earlier cancellation date of this Policy.

(Ex. 1, p. 10)

  10. The Policy states as follows regarding multiple claims or claimants:

  **IV.** **LIMIT OF LIABILITY, RETENTION AND PAYMENT**

\* \* \*

  **D.** **MULTIPLE INSUREDS, CLAIMS OR CLAIMANTS**

  The inclusion herein of more than one **INSURED** or the making of **CLAIM(S)** by more than one person or organization shall not operate to increase Underwriters' Limit of Liability. **CLAIM(S)** arising out of a single **WRONGFUL ACT**, or **INTERRELATED WRONGFUL ACTS**, shall be treated as a single **CLAIM**, and such single **CLAIM** shall be considered first made:

1. when the earliest **CLAIM** within such single **CLAIM** was first made, or

2. when notice was first given under any policy of insurance of any **WRONGFUL ACT** or any matter, fact, circumstance, situation, event or transaction that underlies any **CLAIM** within such single **CLAIM**,

and all such **CLAIM(S)** shall be subject to the same Limit of Liability.

(Ex. 1, pp. 13-14)

11. The Policy contains the following insuring agreement:

**DIRECTORS, OFFICERS AND COMPANY
LIABILITY COVERAGE PART**

\* \* \*

**I.      INSURING AGREEMENTS**

\* \* \*

   **C.** Underwriters shall pay on behalf of the **COMPANY LOSS** resulting from a **CLAIM** first made against the **COMPANY** during the **POLICY PERIOD** for a **WRONGFUL ACT** and reported to Underwriters in accordance with Section VI. of the Policy.

(Ex. 1, p. 21)

12. The Policy contains the following definitions:

**II.      DEFINITIONS**

  **A.** **"CLAIM"** means (1) a written demand for monetary or non-monetary relief received by an **INSURED**; and (2) a civil, criminal, administrative, regulatory or arbitration proceeding for monetary or non-monetary relief received by an **INSURED** which is commenced by service of suit, or the return of an indictment (in the case of a criminal proceeding), and any appeal from such proceeding.

(Ex. 1, pp. 21-22)

\* \* \*

  **C.** **"INSURED"** means the "**COMPANY**" and any **"INSURED PERSON"**.

(Ex. 1, p. 22)

\* \* \*

  **F.** **"LOSS"** means monetary damages, settlements, judgments and statutory attorneys' fees awarded which the **INSURED** is legally obligated to pay in response to a covered **CLAIM**, punitive or exemplary damages or the multiplied portion of a multiplied damages award where insurable under the applicable law, pre-judgment and post-judgment interest on a judgment covered by the terms of this Policy, and **DEFENSE COSTS**. **LOSS** shall not include:

    1. amounts paid or incurred by the **INSUREDS** to comply with a judgment or settlement for non-monetary or injunctive relief;

    2. criminal or civil fines or penalties imposed by law;

4

        3.    taxes;

        4.    matters that may be deemed uninsurable under the law pursuant to which this Policy shall be construed.

    **G.**    **"WRONGFUL ACT"** means any actual or alleged act, error or omission, including misstatement, misleading statement, neglect or breach of duty committed by: (1) an **INSURED PERSON** solely in his or her capacity as such on behalf of the **COMPANY;** or (2) the **COMPANY**.

(Ex. 1, p. 23)

    13.    The Policy contains the following Retroactive Date Exclusion:

**RETROACTIVE DATE EXCLUSION**

To be attached to and form part of Policy Number: **SUAWSD50147-2001**

In favor of: **U-DRIVE ACCEPTANCE CORP**

In consideration of the payment of the premium for this Policy, it is hereby understood and agreed that the following exclusion is added to the Exclusions in Section IV of the General Terms and Provisions of this Policy and applies to all Coverage Parts.

    **IV.**    **EXCLUSIONS**

This Policy shall not apply to **LOSS** in connection with any **CLAIM:**

Involving any **WRONGFUL ACT** committed or alleged to have been committed prior to the Retroactive Date stated in Item 6 of the Declarations.

The effective date of this endorsement is <u>January 29, 2020</u>.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

(Ex. 1, p. 41).

## THE UNDERLYING HAMMONS LITIGATION

    14.    On August 18, 2019, U-Drive filed a Petition against Debra Sue Hammons in the Circuit Court of Boone County attempting to recover a money judgment under a retail installment contract for a 2007 Subaru Forester purchased by Hammons (the "Hammons Action"). (ECF 34, p. 3, ¶9)

    15.    On September 18, 2020, Hammons filed her First Amended Answer and Counterclaim to the Petition and asserted a putative class action against U-Drive (the

5

"Counterclaim").  (ECF 34, p. 3, ¶10, ECF 34-2).  A true and correct copy of the Counterclaim (including exhibits) is attached hereto as Exhibit 2.[2]

16. Hammons alleged an unlawful and deceptive pattern of wrongdoing by U-Drive in the collection, enforcement, repossession, disposition of collateral, as well as deficiencies in violation of the UCC and Missouri UCC.  (Ex. 2., pp. 2-3, ¶¶1-2)

17. Hammons's Counterclaim alleged that she signed a consumer credit contract for the purchase of a motor vehicle and that, when she fell behind on payments, U-Drive took possession of the vehicle.  (Ex. 2., p. 7, ¶¶32,36)

18. Hammons alleged that, before repossessing the vehicle, U-Drive mailed her a pre-disposition document titled "Notice of Our Plan to Sell Property" dated **March 30, 2017** (the "Presale Notice") and a post-sale "Notice of Sale of Collateral and Possible Deficiency" dated **May 16, 2017** (the "Post-Sale Notice") (Ex. 2, p. 4, , ¶8; p. 5, ¶14)

19. Count I alleged that U-Drive's Presale Notice violated the UCC and that, because U-Drive failed to comply with the requirements of Subchapter 6 of Article 9 of the UCC and reported derogatory information about the class members' accounts, Hammons and the proposed class allegedly suffered actual damages under §400.9-625(c)(2) of the UCC.  (Ex. 2, pp.14-15, ¶¶80-86)

20. Hammons requested class certification, statutory damages, preliminary and permanent injunctions, and a declaration that the Presale Notice sent to Hammons and the class failed to comply with the statutory requirements.  (Ex. 2, p. 15, prayer for relief)

---

[2] All citations to the Counterclaim will be referred to as Exhibit 2.

6

21. Under Count II (Missouri Subclass's Claim), Hammons alleged that U-Drive's presale and post-sale notices violated the Missouri UCC and requested certification of a Missouri subclass. (Ex. 2, pp. 16-18, ¶¶87-prayer for relief)

22. Count II requested actual damages, statutory damages, pre- and post-judgment interest, attorney's fees, punitive damages, and various injunctive and declaratory relief. (Ex. 2, p. 18, prayer for relief)

23. Underwriters defended U-Drive throughout the Hammons Action pursuant to a reservation of rights to deny coverage, including any duty to defend or indemnify U-Drive for any settlement or judgment in the Hammons Action. Pursuant to its reservation of rights, Underwriters agreed to pay independent attorneys of U-Drive's choice to defend the Hammons Action. (ECF 34, pp. 13-14, ¶¶34-37)

24. On August 15, 2021, the court in the Hammons Action granted class certification of the Class and Missouri Subclass under Rule 52.08, finding that "In granting the Motion, the Court specifically finds that Ms. Hammons has met her burden with respect to numerosity, commonality, typicality and adequacy and further finds that she has met her burden with respect to predominance and superiority." (Case.net docket for Hammons Action, attached as Exhibit 3, pp. 6-7)

## NOTICE TO UNDERWRITERS OF HAMMONS LITIGATION AND DEFENSE PURSUANT TO RESERVATION OF RIGHTS

25. On or about December 7, 2020, U-Drive first provided notice to Underwriters of the Hammons Lawsuit and Counterclaim (the "Notice"). (ECF 34, p. 13, ¶33)

26. On or about January 11, 2021, Underwriters responded to U-Drive's Notice and advised that Underwriters would agree to fund the defense of U-Drive pursuant to the terms of the

Policy with respect to the Counterclaim filed in the Hammons Lawsuit, pursuant and subject to a reservation of rights, remedies and defenses that may apply. (ECF 34, p. 13, ¶34)

27. Underwriters agreed to pay for U-Drive's defense of the Counterclaim in the Hammons Lawsuit, through U-Drive's independently selected counsel. (ECF 34, p. 13, ¶35)

28. Pursuant to its reservation of rights, Underwriters consented to U-Drive's choice of counsel, The Barton Law Group, LLC. (ECF 34, p. 14, ¶37)

**JUDGMENT ENTERED AGAINST U-DRIVE IN HAMMONS ACTION**

29. On November 8, 2023, the Court in the Hammons Action entered a judgment and order (the "Judgment Order") in favor of Hammons and against U-Drive. (ECF 34, p. 14, ¶38) A true and correct copy of the Judgment Order is attached as Exhibit 4.

30. On November 30, 2023, the Court in the Hammons Action entered an "Order Approving Award of Attorney's Fees, Expenses, and Incentive Payment to Class Representative" against U-Drive (the "Fee Order"). (ECF 34, p. 15, ¶41) A true and correct copy of the Fee Order is attached as Exhibit 5.

Dated: February 26, 2024

Respectfully submitted,

THOSE CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, SUBSCRIBING TO CERTIFICATE NO. SUAWSD50147-2001

By: */s/: Howard J. Fishman*
      One of their attorneys

Michael L. Young
REICHARDT NOCE & YOUNG
12444 Powerscourt Drive
Suite 160
St. Louis, MO  63131
Tel:    (314) 789-1199
Fax:   (314) 754-9795
mly@reichardtnoce.com

- and

Howard J. Fishman (admitted *pro hac vice*)
KARBAL, COHEN, ECONOMOU, SILK & DUNNE, LLC
200 South Wacker Drive
Suite 2550
Chicago, Illinois 60606
Tel:    (312) 431-3700
Fax:    (312) 431-3670
hfishman@karballaw.com

## CERTIFICATE OF SERVICE

I, Howard J. Fishman, an attorney of record in this matter, hereby state that I electronically filed the foregoing, PLAINTIFFS' STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT, using the CM/ECF SYSTEM, which will send notification to all attorneys of record on this the 26th day of February 2024.

/s/: *Howard J. Fishman*
One of their attorneys for Plaintiff,
THOSE CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, SUBSCRIBING TO CERTIFICATE NO. SUAWSD50147-2001

9