UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| THOSE CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, SUBSCRIBING TO CERTIFICATE NO. SUAWSD50147-2001, | ) ) ) ) |
| Plaintiff, | ) ) |
| vs. | )  Case No. 4:23 CV 99 JMB ) |
| U-DRIVE ACCEPTANCE CORPORATION, INC. and DEBRA SUE HAMMONS, | ) ) ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff Those Certain Underwriters at Lloyd's, London, Subscribing to Certificate No. SUAWSD50147-2001's Motion for Summary Judgment (Doc. 38), to which Defendant Debra Sue Hammons responded (Doc. 41), and Plaintiff replied (Doc. 43).[1] For the reasons set forth below, the Motion is **GRANTED**.

**I.    Introduction**

Plaintiff Lloyds filed suit on January 27, 2023 (Docs. 1, 34) seeking a declaration of its obligation to defend and/or indemnify U-Drive Acceptance Corporation in a class action claim filed by Debra Sue Hammons. 28 U.S.C. § 2201. In an underlying suit filed on August 18, 2019, U-Drive sued Hammons in state court alleging breach of an auto loan agreement. In a counterclaim filed on September 16, 2020, Hammons alleged a consumer class action claim as to U-Drive's enforcement and collection practices related to those auto loans. U-Drive allegedly provided notice to Lloyds about Hammons' counterclaim on December 7, 2020. Lloyds allegedly agreed

---

[1] Defendant U-Drive Acceptance Corporation did not file a response.

to defend U-Drive under a reservation of rights policy. Attached to the Complaint are U-Drive's state court petition, Hammons' counterclaim, and the relevant insurance policy.

## II. Background

The evidence consists of the insurance policy at issue and state court filings, the authenticity of which Hammons does not dispute, and which speak for themselves. In outlining its statement of facts, Lloyds cites to its unverified complaint, which is, of course, not evidence. See Wilson v. Miller, 821 F.3d 963, 970 (8th Cir. 2016). Accordingly, any statement of fact that is unsupported by evidence will be disregarded, including Lloyds' statement of facts 25-28 which purport to recount communication between Lloyds and U-Drive but which are otherwise unsupported by the record (Doc. 40).

Lloyds issued a Management Liability Insurance Policy to U-Drive with an effective date of January 29, 2020 to January 29, 2021 (Doc. 1-5, p. 5). The policy provides that Lloyds "shall have the right and duty to defend any **CLAIM** against the **INSURED** to which this insurance applies, even if any of the allegations of the **CLAIM** are groundless, false or fraudulent" (Doc. 1-5, p. 8 (emphasis in original here and below)). The policy contains various exclusions; of relevance is the "**RETROACTIVE DATE EXCLUSION**" which states:

> In consideration of the payment of the premium for this Policy, it is hereby understood and agreed that the following exclusion is added to the Exclusions in Section IV of the General Terms and Provisions of this Policy and applies to all Coverage Parts.
>
> **IV. EXCLUSIONS**
>
> This Policy shall not apply to **LOSS** in connection with any **CLAIM:**
>
> Involving any **WRONGFUL ACT** committed or alleged to have been committed prior to the Retroactive Date stated in Item 6 of the Declarations.
>
> The effective date of this endorsement is January 29, 2020.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

(Doc. 1-5, p. 41). The "Retroactive Date" is listed as January 29, 2020 (Doc. 1-5, p. 6). Another relevant exclusion involves "**MULTIPLE INSUREDS, CLAIMS OR CLAIMANTS**" and provides:

> The inclusion herein of more than one **INSURED** or the making of **CLAIM(S)** by more than one person or organization shall not operate to increase Underwriters' Limit of Liability. **CLAIM(S)** arising out of a single **WRONGFUL ACTS**, or **INTERRLATED WRONGFUL ACTS**, shall be treated as a single **CLAIM**, and such single **CLAIM** shall be considered first made:
>
> 1. when the earliest **CLAIM** within such single **CLAIM** was first made,
>
> or
>
> 2. when notice was first given under any policy of insurance of any **WRONGFUL ACT** or any matter, fact, circumstance, situation, event or transaction that underlies any **CLAIM** within such single **CLAIM**,
>
> and all such **CLAIM(S)** shall be subject to the same Limit of Liability.

(Doc. 1-5, pp. 13-14).

The Policy further provides the following relevant definitions.

A. "**CLAIM**": means (1) a written demand for monetary or non-monetary relief received by an **INSURED**; and (2) a civil, criminal, administrative, regulatory or arbitration proceeding for monetary or non-monetary relief received by an **INSURED** which is commenced by service of suit, or the return of an indictment (in the case of a criminal proceeding), and any appeal from such proceeding (Doc. 1-5, p. 21-22).

B. "**LOSS**": means monetary damages, settlements, judgments and statutory attorneys' fees awarded which the **INSURED** is legally obligated to pay in response to a covered **CLAIM**, punitive or exemplary damages or the multiplied portion of a multiplied damages award

where insurable under the applicable law, pre-judgment and post-judgment interest on a judgment covered by the terms of this Policy, and **DEFENSE COSTS**. **LOSS** shall not include:

1. amounts paid or incurred by the **INSUREDS** to comply with a judgment or settlement for non-monetary or injunctive relief;

2. criminal or civil fines or penalties imposed by law;

3. taxes;

4. matters that may be deemed uninsurable under the law pursuant to which this Policy shall be construed (Doc. 1-5, p. 23)

C. **WRONGFUL ACT**: means any actual or alleged act, error or omission, including misstatement, misleading statement, neglect or breach of duty committed by: (1) an **INSURED PERSON** solely in his or her capacity as such on behalf of the **COMPANY**; or (2) the **COMPANY**[2] (Doc. 1-5, p. 23).

D. **DEFENSE COSTS**: means reasonable and necessary fees and expenses incurred with the approval of Underwriters in connection with the investigation, adjustment, settlement, defense or appeal of a **CLAIM** made against an **INSURED** for a **WRONGFUL ACT**, and shall include the cost of attachment or similar bonds. Payment of **DEFENSE COSTS** by underwriters shall reduce, and may exhaust, the Limit of Liability under this Policy.

"**DEFENSE COSTS**" shall not include: (a) amounts incurred by any **INSURED** prior to the date the **CLAIM** is first made and reported to Underwriters; and (b) salaries, wages, fees, overhead, overtime or benefit expenses incurred by or associated with the **INSUREDS** (Doc. 1-5, p. 9-10).

---

[2] It is undisputed that for purposes of this case, U-Drive is the "company" and the "insured."

E.  **INTERRELATED WRONGFUL ACTS**: **WRONGFUL ACTS** that have as a common nexus any fact, circumstance, situation, event, or transaction or series of facts, circumstances, situations, events or transactions (Doc. 1-5, p. 10).

In the August 18, 2019 state court petition filed by U-Drive, it alleged that Hammons breached a January 20, 2017 auto loan contract and that it incurred $4,251.90 in damages (Doc. 1-3). In her September 18, 2020 answer, Hammons admitted to executing the contract but denied that she was in default or that she owed any damages (Doc. 40-2). In her consumer class action counterclaim, she generally alleges that U-Drive did not conform to the Uniform Commercial Code by "sending deficient statutorily-mandated post-repossession, pre-disposition notices ('presale notice')" and that subsequent post-sale notices and attempts to collect interest on alleged defaults did not comport with Missouri law (Doc. 40-2, pp. 3-20). Attached to the counterclaim are a presale notice dated March 30, 2017 and a notice of sale of collateral dated May 16, 2017, both addressed to Hammons (Doc. 40-2, pp. 21-23). The class Hammons seeks to represent is defined as follows:

> The Class comprises all persons ("Class") within the applicable statute of limitations:
>
> a.  who are named as borrowers or buyers on a loan or financing agreement with Plaintiff, assigned to Plaintiff or owned by Plaintiff;
>
> b.  whose loan or financing agreement was secured by collateral;
>
> c.  who was mailed a presale notice that stated both (1) "We will sell the Vehicle at a public sale" and (2) "We will sell the Vehicle at a private sale"; and
>
> d.  whose collateral was disposed.
>
> The Missouri Subclass comprises all persons within the applicable ("Missouri Subclass"):

    a.    who obtained a Missouri Certificate of Title for a motor vehicle identifying Plaintiff as the lienholder, or who are named as borrowers or buyers with a Missouri address on a loan or financing agreement with Plaintiff, assigned to Plaintiff or owned by Plaintiff;

    b.    whose loan or financing agreement was secured by a motor vehicle or other collateral;

    c.    who was mailed a presale notice that stated both (1) "We will sell the Vehicle at a public sale" *and* (2) "We will sell the Vehicle at a private sale"; and

    d.    whose collateral was disposed.

(Doc. 40-2, p. 10). For relief, the alleged classes seek statutory damages, actual damages, interest, punitive damages, attorney fees, and injunctive and declaratory relief (Doc. 40-2, pp. 16, 18).

## III.    Standard

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under Rule 56, a party moving for summary judgment bears the burden of demonstrating that no genuine issue exists as to any material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Once the moving party discharges this burden, the non-moving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Id. at 247. The non-moving party may not rest upon mere allegations or denials in the pleadings. Id. at 256. "Factual disputes that are irrelevant or unnecessary" will not preclude summary judgment. Id. at 248. In ruling on a motion for summary judgment, the court must construe all facts and evidence in the light most favorable to the non-movant, must refrain from making credibility

Page **6** of **11**

determinations and weighing the evidence, and must draw all legitimate inferences in favor of the non-movant. Id. at 255.

There are no facts in dispute.

**IV.   Discussion**

The insurance policy contains no choice of law clause (See Doc. 1-5, p. 36). In this diversity cases, both parties agree (or at least do not disagree) that Missouri's substantive law governs this dispute. See, e.g., BITCO General Ins. Corp. v. Smith, 89 F.4th 643, 645-647 (8th Cir. 2023); Pitman Farms v. Kuehl Poultry, LLC, 48 F.4th 866, 875 (8th Cir. 2022).

In Missouri, unambiguous insurance contracts are enforced as written. Scaglione v. Acceptance Indemnity Ins. Co., 74 F.4th 944, 950 (8th Cir. 2023). Words are given their plain and ordinary meaning and contracts are read as a whole; the Court must not "unreasonably distort" contract language or "exercise inventive powers" in order to create ambiguity. Todd v. Missouri United School Ins. Council, 223 S.W.3d 156, 162-3 (Mo. 2007). However, if there is ambiguity, the contract is construed in favor of the insured. Id. at 160. Ambiguity exists if "there is duplicity, indistinctness, or uncertainty in the meaning of the language of the policy. Language is ambiguous if it is reasonably open to different constructions." Burns v. Smith, 303 S.W.3d 505, 509-510 (Mo. 2010). Plaintiff's sole argument is that the unambiguous policy does not apply to Hammons' counterclaim because that counterclaim concerns wrongful acts that occurred prior to January 29, 2020, the retroactive date contained in the policy. Thus, Plaintiff argues, it has no obligation to defend (or indemnify) U-Drive.

A duty to defend is distinct and broader than a duty to indemnify. Piatt v. Indiana Lumbermen's Mut. Ins. Co., 461 S.W. 788, 793 (Mo. 2015); McCormack Baron Mgmt. Servs., Inc. v. Am. Guarantee & Liab. Ins. Co., 989 S.W.2d 168, 170–71 (Mo. 1999); Scaglione, 75 F.4th

at 950 n.2.  Insurers have a duty to defend if "there is some possibility or potential for coverage at the outset of the case."  Allen v Byers, 512 S.W.3d 17, 31 (Mo. 2016).  "The duty to defend is determined by comparing the insurance policy language with facts: '(1) alleged in the petition; (2) the insurer knows at the outset of the case; or (3) that are reasonably apparent to the insurer at the outset of the case.'"  Id. (quoting Allen v. Cont'l W. Ins. Co., 436 S.W.3d 548, 553 (Mo 2014)).  An insurance company can prevail on its claim that there is no duty to defend only if there is no possibility of coverage.  Allen, 512 S.W.3d at 31; See also, Allen v. Cont'l W. Ins. Co., 436 S.W.3d at 552–53.

      The insurance policy issued by Plaintiff is a claims-based policy.  See Kilcher v. Continental Cas. Co., 747 F.3d 983, 987 (8th Cir. 2014) (describing a similar policy).  It broadly provides that Lloyds will defend U-drive on any claim filed against it subject to certain exceptions.  One such exception is for claims based on wrongful acts committed prior to January 20, 2020.  Plaintiff thus argues that Hammons' counterclaim, based on pre- and post-sale notices issued in 2017 (the wrongful acts), is subject to the exclusion and it is not required to defend.  In response Hammons' argues that because she is asserting a class action claim, some offending pre- and/or post-sale notices could possibly have been issued after January 20, 2020.  Therefore, because there is a possibility that some members of the class were subjected to wrongful acts after the retroactive date, Lloyds has a duty to defend.  To counter this argument and suggest that there is no possibility of coverage, Lloyds notes the second relevant exclusion which treats multiple claims arising out of the same transaction or occurrence as one claim whose relevant wrongful act date is the date of the first such act – again 2017.  The Court finds Plaintiff's arguments convincing.  The policy is unambiguous and excludes Hammons' claims from coverage.  See Pine Bluff School District v.

Ace American Ins. Co., 984 F.3d 583 (8th Cir. 2020) (in applying Arkansas law, enforcing a similar, but not identical, interrelated wrongful act clause with time limitation on claims covered).

The Eighth Circuit recently issued an opinion in Dexon Computer, Inc. v. Travelers Property Cas. Co. of America, 101 F.4th 969 (8th Cir. 2024), that sheds light on the issues in this case. In Dexon, plaintiff sought defense and indemnification on 35 trademark infringement and counterfeiting claims leveled against it in a single lawsuit. The insurance policy contained a retroactive date clause which provided, similarly to this case, that a series of related wrongful acts will be considered committed on the date of the first such related act. Based on this clause, defendant denied coverage because some of the acts occurred prior to the dates of coverage. In applying Minnesota law (which is similar if not identical to Missouri law), the Eighth Circuit found that even though plaintiff alleged a "unified, continuous counterfeit trafficking scheme spanning more than 15 years," its asserted individual transactions, some of which were within the policy time limits thus triggering a duty to defend. Id. at 974-5. Importantly, the Court noted that while plaintiff would have liked to aggregate the claims to ensure greater damages, each individual claim was a stand-alone claim on which the plaintiff could prevail regardless of the merits of the other claims.

In this case, the very nature of Hammons' class action claim belies the argument that each class member's claim should be treated as a separate, distinct, and stand-alone claim. The legal vehicle through which Hammons asserted her counter claim, by definition, requires common questions of law and fact and the typicality of Hammons' claims vis-à-vis other class plaintiffs. As such, each of the class claimants are alleging claims that have a "common nexus" of "fact, circumstance, situation, event, or transaction" – namely the deficient pre- and post-sale notices. There is no controlling precedent governing the issues in this case. However, Courts construing

similar language and similar (but not identical) circumstances find that coverage does not apply when interrelated claims are made and a policy treats such claims as filed on the date of the first instance of such claims. See, e.g., Highwoods Properties, Inc. v. Executive Risk Indem., Inc., 407 F.3d 917, 924-925 (8th Cir. 2005) (applying North Carolina law and finding that two separate lawsuits are related for policy coverage purposes because both suits have an "established connection or resemblance" related to some separate communications to individuals); Gregory v. Home Ins. Co., 876 F.2d 602, 605 (7th Cir. 1989) (applying Indiana law and stating that the district court was correct in treating class claims, that arose from the same conduct, as a single claim under a similar insurance clause); WFS Financial, Inc. v. Progressive Cas. Ins. Co., Inc., 232 Fed.Appx. 624, 625-626 (9th Cir. 2007) (applying California law and finding that "interrelated wrongful acts" included suits that were "filed by two different sets of plaintiffs in two different fora under two different legal theories" because they involved the same business practice of the insured); Continental Cas. Co. v. Wendt, 205 F.3d 1258, 1264 (11th Cir. 2000) (finding that interrelated wrongful acts include a course of conduct "aimed as a single particular goal").

Accordingly, the Court finds that the Hammons counterclaim alleges a "common nexus" of "fact, circumstance, situation, event or transaction or series of facts, circumstances, situations, events, or transactions" as those terms are commonly understood. These interrelated wrongful acts form a single claim and was based on a wrongful act first made in 2017, prior to the retroactive date of January 29, 2020. As such, the claim is not subject to coverage under the relevant policy and Plaintiff owes no duty to defend U-Drive under the terms of the policy with respect to Hammons' counterclaim.

In suggesting the opposite conclusion, Hammons relies on Nationwide Mut. Ins. Co. v. Harris Med. Assocs., LLC, 973 F.Supp.2d 1045 (E.D. Mo. 2013). That case is easily

distinguishable; the policy at issue did not have an interrelated wrongful act clause. Another case relied on by Hammons, <u>Park W. Galleries, Inc. v. Illinois Nat. Ins. Co.</u>, 2013 WL 6095482 (E.D. Mich. 2013), is similarly distinguishable.[3] Hammons then argues that the policy language is ambiguous but does not identify any ambiguity. Finally, Hammons argues that some acts, like credit reporting, may have occurred during the policy period. However, that argument ignores the related nature of all the claims made in Hammons' counterclaim. Hammons' remaining arguments are either unsupported by case authority (even the case authority cited), are based on decisions that did not involve similar policy language or the issues raised in this case, or which completely ignore the policy exclusions at issue. <u>See</u>, <u>e.g.</u>, Doc. 42, p. 7 and Hammons' misplaced reliance on <u>Hartford Acc. and Indem. Co. v. Beaver</u>, 466 F.3d 1289 (11th Cir. 2006) (while dealing with an underlying class action, construing an insurance policy pursuant to Florida law that is dissimilar to the policy before this Court).

**V.     Conclusion**

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (Doc. 38) is **GRANTED**. Plaintiff owes no duty to defend under the relevant insurance policy. In light of this conclusion, Plaintiff further owes no duty to indemnify. The Clerk of Court is directed to enter judgment in favor of Plaintiff and against Defendants and to terminate this matter accordingly.

*/s/ John M. Bodenhausen*
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

Dated this 10th day of June, 2024

---

[3] In that case, the Court found that an exclusion somewhat similar to the "first made" definition of claim in this case, barred coverage of related class action lawsuits; as such, it is unclear how this case is beneficial to Hammons, even if it is considered controlling authority.